## Maggie E. Rettig, Administratrix, Appellee, v. Swift & Company, Appellant.

MASTER AND SERVANT—*when doctrine of assumed risk precludes recovery.* If an experienced servant is injured as the result of a danger known to and appreciated by him at the time, he cannot recover.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1908. Reversed. Opinion filed September 12, 1908.

C. E. POPE, for appellant.

D. J. SULLIVAN, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee brought suit as administratrix of the estate of Fred Rettig, deceased, for the benefit of herself as his widow and their three children, as next of kin, alleging that the death of her intestate was caused by the negligence of appellant while he was in its employ, and recovered a judgment for $5,000.

Appellant, which brings the record here for review, was, as it appears from the evidence, a corporation engaged in packing meat products at the National Stock Yards near East St. Louis. At its plant there are two engine rooms, No. 1 furnishing power for operating a portion of the plant and making electric lights, and No. 2 furnishing power for a portion of the plant and also operating refrigerating machines, which are there located. The appellant has a chief engineer, who has general supervision of the machinery, and at each engine room there was an engineer who had charge of the machinery in that particular room and the men working under him.

Fred Rettig, the deceased, was at the time he received the injuries which resulted in his death, an

electrical engineer 43 years of age and had been so employed for a number of years. He had formerly been employed for a period of a year and a half by appellant at the same plant, where he had charge of engine room No. 1. He also worked for four months as engineer in a small refrigerating plant at Austin, Minnesota, and was employed at other places where there was no refrigerating apparatus.

About January 1, 1907, he was again employed by appellant and placed in charge of its engine room No. 2, under the general supervision of its chief engineer, Mr. Walker. The engine room in which he was employed was about thirty feet high and near the roof on the south side were some electric wires. About three feet below these wires was an inch pipe used for conveying ammonia. On the south side of the room there were two rows of windows, five in each row, while there were also windows in the end of the building and two skylights in the roof. On January 11, 1907, some of appellant's electricians were engaged in making arrangements to repair certain of the electric wires above mentioned and in doing so placed a ladder alongside of the inch ammonia pipe which at this point turned directly downward for a distance of some fifteen feet, the pipe and ladder being located between two windows. After the ladder was placed in position one of the electricians attempted to ascend it when he was affected by escaping ammonia and had to descend. It was then discovered there was a leak in the ammonia pipe at a flange joint near the ladder and that it would be necessary to stop the leak before the work of repair could be continued. The matter of the leak was reported to Chief Engineer Walker, who was in the engine room at the time, and he directed Rettig to take a wrench and tighten the bolts in the flange joint. Rettig took the wrench and ascended the ladder for the purpose of tightening the joint, but when he had gotten up part way, he was partially overcome by the ammonia escaping from the leak and coming down was as-

sisted by the electricians into the open air. He afterwards reported the condition of affairs to Chief Engineer Walker, who instructed him to shut off a certain valve and pump out the line.

There is a conflict in the evidence as to what further, if anything, Walker told deceased. Walker testified, "I did not direct him to do anything except to shut the valve off and pump the line out and tighten the joint; he understood that the leak was to be fixed. I did not tell him to go the second time." On the other hand one of the electricians testified that Walker "told him to go back up as soon as the valve was shut off and it would be all right" and another witness, an oiler in the engine room, that "he told Walker that the ammonia was too strong he could not stand it up there and Walker then told him to close those valves and pump the line out and then he could get up and fix it."

Rettig followed the instructions of Walker in regard to closing the valve and pumping out the line and again took his wrench and went up the ladder. After he had been on the ladder but a very short time he suddenly fell to the floor, receiving injuries which soon afterwards caused his death.

Appellant urges a number of reasons for the reversal of the judgment in this case, but it is necessary to concern ourselves only with those which relate to the evidence. While it is contended by appellant that it is not shown what caused Rettig to fall from the ladder and that it may have been brought about by contact between his wrench and the electric wires or in other ways, yet we are of opinion the evidence was sufficient to warrant the jury in finding that the fall was occasioned through his being overcome by the fumes of the escaping ammonia. Rettig was a man of mature years and was shown to have been an experienced and competent engineer. It also appeared he had other men working under him, engaged in oiling the engines and keeping the engine room and engines clean; that it was the

duty of the engineer in charge of the engine room to make repairs that were urgent, were small in extent and could be done with a wrench or some similar implement; that deceased was directed to go up the ladder and stop the leak at the flange with a wrench; that such work was then apparently within the scope of his duty, though it subsequently developed that new bolts and a new gasket were necessary to repair the flange joint and that such repairs were the steamfitters' work; that while he was not an expert in the handling of refrigerator appliances and in the use of ammonia, yet from his experience in the refrigerating plant in Minnesota, and in appellant's plant, he must have acquired some knowledge of its character, its odor and the danger attending its inhalation, when present in large volumes; that even if he had not acquired this knowledge before, it became apparent to him from his experience when he attempted to ascend the ladder the first time and was so nearly overcome by the fumes of the ammonia, that he had to be helped to the open air. The work which Rettig was directed to do appears to have been in the line of his employment and the evidence shows he was acquainted with the dangers attending its execution. Under these circumstances we must hold that he assumed the risk incident to the employment in which he was engaged at the time he was injured.

The judgment of the court therefore will be reversed, and as in our opinion no recovery can be had upon the facts, as they are claimed by appellant to exist, the cause will not be remanded.

*Reversed.*

Finding of facts to be incorporated in the judgment: We find that said Fred Rettig's death was the result of injuries occasioned by his falling from a ladder in appellant's packing plant; that the fall was caused by his having been overcome by fumes of ammonia escaping from a leak in a pipe which he was then attempt-

328    Appellate Courts of Illinois.

Goodall v. Eldorado, Marion & S. W. R. R. Co., 143 App. 328.

ing to remedy; that deceased knew of the danger at-
tending the work which he was then about to perform
and assumed it as an ordinary risk of the business in
which he was engaged.